IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
CIVIL CASE NO. 1:24-cv-00223-MR-WCM

| | |
|---|---|
| **LEIGH KAVOUKLIS,** )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>**KINGS ROW L.P. and DEBRA JEAN** )<br>**JOHNSTON,** )<br>)<br>Defendants. )<br>_____ ) | **MEMORANDUM OF**<br>**DECISION AND ORDER** |

**THIS MATTER** is before the Court on the Defendants' Motion for Summary Judgment [Doc. 30].

## I.    PROCEDURAL BACKGROUND

On April 26, 2024, the Plaintiff Leigh Kavouklis initiated this action by filing a Complaint against the Defendants Kings Row L.P., Debra Jean Johnston, and VRBO Holdings, Inc. in Macon County Superior Court in North Carolina, asserting claims for injuries she sustained when she tripped and fell on a step at a vacation rental property. [Doc. 1-1]. VRBO Holdings timely filed Notice of Removal to this Court on August 27, 2024. [Doc. 1]. On September 16, 2024, the Plaintiff voluntarily dismissed Defendant VRBO Holdings. [Doc. 10]. The remaining Defendants Kings Row L.P. and Debra

Jean Johnston filed their Answers on November 27, 2024. [Doc. 22; Doc. 23]. Discovery closed on July 11, 2025, and the Defendants filed a Motion for Summary Judgment on July 16, 2025. [Doc. 30]. The Plaintiff filed a Memorandum in Opposition on July 30, 2025, [Doc. 32], and the Defendants filed their Reply on August 4, 2025, [Doc. 33]. Accordingly, the Defendants' Motion for Summary Judgment is ripe for adjudication.

**II.    STANDARD OF REVIEW**

Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if it "might affect the outcome of the case." News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010). A "genuine dispute" exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

A party asserting that a fact cannot be genuinely disputed must support its assertion with citations to the record. Fed. R. Civ. P. 56(c)(1). "Regardless of whether he may ultimately be responsible for proof and persuasion, the party seeking summary judgment bears an initial burden of demonstrating the absence of a genuine issue of material fact." Bouchat v.

Baltimore Ravens Football Club, Inc., 346 F.3d 514, 522 (4th Cir. 2003). If this showing is made, the burden then shifts to the nonmoving party, who must convince the Court that a triable issue exists. Id. Finally, in considering a party's summary judgment motion, the Court must view the pleadings and materials presented in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of the nonmovant. Adams v. Trs. of the Univ. of N.C.-Wilmington, 640 F.3d 550, 556 (4th Cir. 2011).

### III. FACTUAL BACKGROUND

Viewing the parties' forecasts of evidence in the light most favorable to the Plaintiff, the following is a recitation of the relevant facts.

The Plaintiff is a Florida resident who used VRBO to rent a vacation property in Highlands, North Carolina. [Doc. 1-1 at ¶¶ 1, 6, 13]. The Defendant Kings Row L.P. is the owner of the vacation rental property. [Id. at ¶ 6; Doc. 32-2 at 17:15-19:10]. The Defendant Debra Jean Johnston is the sole principal of Kings Row L.P. and the manager of the vacation rental property. [Doc. 32-2 at 13:22-23, 18:4-6]. Prior to May 7, 2021, the Plaintiff entered into a rental agreement with the Defendants whereby the Plaintiff agreed to rent the vacation property for period of time in May of 2021. [Doc. 1-1 at ¶ 13].

The Plaintiff arrived with her husband at the rental property in the evening on May 7, 2021. [Doc. 30-2 at 17:19-18:2]. Within an hour of arriving, the Plaintiff walked up a flight of stairs to take a shower on the second floor. [Id. at 20:1-2, 22:17-19]. As the Plaintiff ascended the stairs, she used every step, and she did not notice anything defective about them. [Id. at 22:20-23:1-2]. At the time the Plaintiff ascended the stairs, there was still some ambient light from a window illuminating them. [Id. at 59:20-24].

After taking a shower, the Plaintiff descended the same flight of stairs. [Id. at 20:4-6]. At the time the Plaintiff descended the stairs, a light from an upstairs bedroom illuminated the top steps, but it got dimmer as she descended the stairs. [Id. at 23:16-25]. By the time the Plaintiff reached the last stair, it was dark. [Id. at 23:21-22]. The Plaintiff has "no memory" of whether she tried to turn on the stairwell light before descending the stairs, and she does not know whether the dimness of the lighting on the stairway contributed to her fall. [Id. at 27:3-8, 27:16-20].

The Plaintiff had her right hand on the railing the entire time she descended the stairs. [Id. at 20:20-21]. As she reached the last stair, her "right foot slipped off the very front of that stair," causing her to fall. [Id. at 20:22-25]. There were openings between all the stairs, and when the Plaintiff fell, her foot wedged in the opening between the last stair and the landing.

[Id. at 21:22-25]. The Plaintiff suffered a broken foot, as well as additional minor injuries, as a result of her fall. [Id. at 21:4-5].

The next day, when it was light, the Plaintiff's husband noticed that the step on which the Plaintiff tripped had dimensions that were different from the dimensions of the other stairs. [Id. at 27:24-28:12]. The Plaintiff's fall "happened too fast" for her to be able to say what, if anything, about the stair's dimensions contributed to her fall. [Id. at 28:13-16]. When asked what caused her fall, the Plaintiff testified: "I don't know what contributed to it. I just know that I fell. Let's just make that my official response because that's just how I feel." [Id. at 61:2-4].

Subsequent investigation revealed that the variances of both the riser height and the tread depth of the bottom step were noncompliant with the North Carolina Residential Building Code. [Doc. 32-3 at 5-6]. That Code requires a minimum tread depth of 9 inches and that the "greatest depth within any flight of stairs shall not exceed the smallest by more than 3/8 inch." [Id. at 4]. The tread depth for the bottom step was 8.88 inches, representing a 1.5-inch variance from the largest tread depth in the staircase.[1] [Id.].

---

[1] The North Carolina Residential Building Code also requires that "the greatest riser height within any flight of stairs shall not exceed the smallest by more than 3/8 inch." [Id.]. The riser height for the bottom step was 5.24 inches, representing a 2.54-inch variance with the tallest riser height in the staircase. [Id. at 4]. However, the forecast of evidence indicates that the Plaintiff fell when stepping onto the final stair before the landing and her

5

It is uncontroverted that the local building inspector inspected the property and approved it, giving it a Certificate of Occupancy. The Defendants made no structural changes to the stairs thereafter. [Doc. 30-4 at 39:4-6, 39:20-23]. The Defendants never had any other professional inspection of the property performed. The Defendants have rented out the property many times to many guests, and none of the guests have ever made note of or complained about any variance in the height or depth of the steps. [Id. at 112:1-18, 116:9-15]. Defendant Johnston has visited the property many times during the ten years she has owned it, and she has never noticed an issue with the steps. [Id. at 72:22-24, 111:25-112:1]. When Defendant Johnston visits the property, she turns all the lights on and checks the property to ensure that it has been cleaned properly. [Id. at 84:5-24]. Defendant Johnston never observed anything that caused her to consider the possibility that the steps were noncompliant with the building code. [Id. at 39:7-14]. Nor has she ever seen any reason to warn guests about the bottom step. [Id. at 65:24-66:9].

---

foot slipped off that stair. As such, she fell while descending the *second* riser, i.e., from the second tread to the first. The offending riser is the *first* riser—from the landing to the first tread. [Doc. 32-3 at 3]. That riser was not involved in how the Plaintiff fell at all.

Neither the Defendants nor the Defendants' Rental Policies warned the Plaintiff that the step on which the Plaintiff tripped was noncompliant with the building code or that it presented a safety issue. [Id.].

In her Complaint, the Plaintiff asserts claims against the Defendants for negligence, breach of contract, and unfair and deceptive trade practices, in violation of N.C. Gen. Stat. § 75-1.1. [Doc. 1-1 at ¶¶ 20-61].

## IV. DISCUSSION

### A. Negligence

In North Carolina, landowners have "a nondelegable 'duty to exercise reasonable care in the maintenance of their premises for the protection of lawful visitors.'" Asher v. Huneycutt, 284 N.C. App. 583, 591, 876 S.E.2d 660, 667 (2022) (quoting Nelson v. Freeland, 349 N.C. 615, 632, 507 S.E.2d 882, 892 (1998)). That duty "requires a landowner . . . to make a reasonable inspection to ascertain the existence of hidden dangers." Id. at 592, 876 S.E.2d at 668 (quoting McCorkle v. N. Point Chrysler Jeep, Inc., 208 N.C. App. 711, 714, 703 S.E.2d 750, 752 (2010)). The landowner, having made a reasonable inspection of the property, must "give warning of hidden hazards of which the landowner has express or implied knowledge." Id. at 591, 876 S.E.2d at 668 (quoting Shepard v. Catawba Coll., 270 N.C. App. 53, 64, 838 S.E.2d 478, 486 (2020)). Whether a landowner has discharged

the requisite duty to warn depends on "whether the landowner acted as a reasonable person would under the circumstances." Id. at 592, 876 S.E.2d at 668 (quoting Shepard, 270 N.C. App. At 64, 838 S.E.2d at 486).

The question on summary judgment is whether the Plaintiff has presented a forecast of evidence that the Defendants knew or reasonably should have known (upon proper inspection) of the hazardous condition of the step. It is undisputed that the Defendants did not warn the Plaintiff.[2]

The Plaintiff concedes this characterization of the issue, arguing that "the lone prong in determining whether Defendants were negligent is: would the condition have been discovered through a reasonable inspection."[3] [Doc. 32 at 17-18]. On this point, Asher v. Huneycutt, 284 N.C. App. 583, 876

---

[2] The parties disagree about whether the step on which the Plaintiff tripped was an "open and obvious condition." If the step was an "open and obvious condition," then the Defendants had no duty to warn the Plaintiff about it. Draughon v. Evening Star Holiness Church of Dunn, 374 N.C. 479, 483, 843 S.E.2d 72, 76 (2020) ("A landowner does not, however, have a duty to warn anyone of a condition that is open and obvious."). Construing the forecast of evidence in the light most favorable to the Plaintiff, the Court cannot conclude as a matter of law that the step was an open and obvious condition. Accordingly, for the purpose of summary judgment, the Court assumes that the Defendants owed the Plaintiff the default duty of reasonable care that landowners owe lawful visitors in North Carolina.

[3] The Plaintiff asserts in her Memorandum in Opposition that "not only was any purported inspection insufficient, in actuality one never existed," [Doc. 32 at 18], but the Plaintiff does not dispute that the property was inspected prior to the issuance of a Certificate of Occupancy or that Defendant Johnston visually checks the premises when she is at the property, nor has the Plaintiff presented any evidence that could provide a basis for such a dispute. Accordingly, the Court cannot accept the Plaintiff's naked assertion that the property was never inspected.

S.E.2d 660 (2022), and Harris v. Tri-Arc Food Sys., Inc., 165 N.C. App. 495, 598 S.E.2d 644 (2004), are instructive.

In Asher, the Plaintiff tripped down a set of steps and injured himself, and later inspection revealed that the variance among the steps' heights and depths were noncompliant with the North Carolina Residential Building Code. Id. at 585, 876 S.E.2d at 664. The plaintiff in Asher argued that a reasonable inspection would have revealed the condition of the steps because their height and depth variances were discoverable by using "nothing more than a tape measure or other simple tools." Id. at 593, 876 S.E.2d at 669. The trial court, however, granted summary judgment for the defendants.

The North Carolina Court of Appeals affirmed, holding that the plaintiff had "failed to come forward with evidence that Defendants breached their duty 'to make a reasonable inspection to ascertain the existence of hidden dangers,'" Asher, 284 N.C. App. at 594, 876 S.E.2d at 669 (quoting McCorkle, 208 N.C. App. at 714, 703 S.E.2d at 752), and thus could not "demonstrate that Defendants 'negligently failed to correct the condition [of the Steps] after actual or constructive notice of its existence,'" id. (quoting Burnham v. S&L Sawmill, Inc., 229 N.C. App. 334, 340, 749 S.E.2d 75, 80 (2013)). The court of appeals held that the Plaintiff had "fail[ed] to

9

demonstrate that an owner's failure to measure the width and height of the steps and calculate the tread slope constitutes a breach of the owner's duty 'to make a *reasonable* inspection to ascertain the existence of hidden dangers.'" Id. (quoting McCorkle, 208 N.C. App. at 714, 703 S.E.2d at 752). Instead, the court credited the undisputed facts that (1) the "Defendants relied on a licensed home inspector's expertise and the feedback of those who regularly used the steps," (2) the "Defendants never received any complaints" from their tenants about the steps, and (3) one of the Defendants "visually examined the Steps multiple times while performing walkthrough inspections of the house before and after changes in tenancy, and he never detected any issues with the steps." Id. at 593-94, 876 S.E.2d at 669. Accordingly, the court concluded as a matter of law that "Defendants had no reason to suspect that the Steps contained 'hidden hazards' that required repairs or warnings." Id. at 594, 876 S.E.2d at 669 (quoting Shepard, 270 N.C. App. at 64, 838 S.E.2d at 486).

The Asher court relied heavily upon Harris, in which the court of appeals affirmed summary judgment for the defendants based on the scope of a landowner's duty to conduct a reasonable inspection of a property. 165 N.C. App. at 500-01, 598 S.E.2d at 648. In Harris, a ceiling in the defendant's restaurant fell on the plaintiff. The court of appeals affirmed summary

10

judgment for the defendant because "the evidence of record shows the building was inspected and approved for occupancy by the building inspector and the plaintiff has failed to produce any evidence to support her allegation that regular inspections of the ceiling would have been necessary or reasonable under the circumstances." Id. at 500, 598 S.E.2d at 648.

In the present case, the Defendants had a Certificate of Occupancy for the property. None of their many prior guests had ever made mention of any defect or hazard in the stairs, and Defendant Johnston had never noticed an issue with the stairs during her walkthroughs of the property. As a result, the Defendants had no reason to suspect that the stairs, and the bottom step in particular, presented a hidden hazard that required a warning. The Plaintiff has forecast no evidence that, even when construed in the Plaintiff's favor, tends to show that the Defendants had express or implied knowledge of the condition that the Plaintiff asserts required a warning. As such, Asher and Harris dictate that the Plaintiff's forecast of evidence is insufficient to show either a failure to make a reasonable inspection, or that the Defendants reasonably should have known of the defect in the step, notwithstanding its noncompliance with the building code.

Accordingly, the Plaintiff cannot demonstrate that the Defendants negligently failed to warn the Plaintiff about the step on which the Plaintiff

tripped. The Court will grant summary judgment for the Defendants as to the Plaintiff's negligence claim.

### B. Additional Claims

The Plaintiff also asserts claims against the Defendants for breach of contract and unfair and deceptive trade practices, in violation of N.C. Gen. Stat. § 75-1.1 ("UDTPA"). [Doc. 1-1 at ¶¶ 38-61]. However, the only alleged basis for her breach of contract claim are her allegations of negligence. Further, the Plaintiff appears to abandon her UDTPA claim. [See Doc. 32 at 25 (stating that "Plaintiff takes no position with respect to movants' arguments regarding her Unfair and Deceptive Trade Practices claim")]. Accordingly, the Court will grant summary judgment for the Defendants as to these claims as well.

### V. CONCLUSION

For the foregoing reasons, the Court will grant summary judgment for the Defendants on all counts.

## O R D E R

**IT IS THEREFORE ORDERED** that the Defendant's Motion for Summary Judgment [Doc. 30] is hereby **GRANTED**, and this case is **DISMISSED WITH PREJUDICE**. A Judgment consistent with this

Memorandum of Decision and Order will be entered contemporaneously herewith.

The Clerk is respectfully requested to close this civil case.

**IT IS SO ORDERED.**

Signed: September 29, 2025

Martin Reidinger
Chief United States District Judge

13

Case 1:24-cv-00223-MR-WCM   Document 34   Filed 09/29/25   Page 13 of 13